UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTEN SELBURG, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 1:11-cv-1458-RLY-MJD |
| *vs.* | ) ) | |
| VIRTUOSO SOURCING GROUP, LLC . | ) ) | |
| Defendant. | | |

**ENTRY ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff, Kristen Selburg ("Plaintiff"), brings this amended class action Complaint against Defendant, Virtuoso Sourcing Group, LLC ("Virtuoso"), on behalf of herself and all others similarly situated, alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Presently before the court is Plaintiff's Motion for Class Certification. For the reasons set forth below, Plaintiff's motion is **GRANTED** as to the amended class definition.

I. **Background**

Plaintiff brings this action against Virtuoso to recover damages for violations of the FDCPA, 15 U.S.C. § 1692 *et seq*. On November 2, 2011, Plaintiff filed an individual complaint against Virtuoso alleging that a debt collection letter she received from Virtuoso violated the FDCPA. (Pl.'s Original Compl., dated Nov. 2, 2011). Plaintiff then filed an amended complaint on February 1, 2012, which contained the same

substantive claims on a class action basis for all other persons who received a similar

debt collection letter during the stated time period.  (Pl.'s Amended Compl., dated Feb. 1,

2012 ("Compl.")).

     In particular, Plaintiff alleges that Virtuoso sent her a form entitled "Collection

Notice" dated November 3, 2010[1], which demanded payment of a delinquent consumer

debt.  (Compl. Ex. B).  Plaintiff alleges Virtuoso is a company regularly engaged in debt

collection and that it sent this same "Collection Notice" to hundreds or more other

persons in an attempt to collect delinquent consumer debts.  (*Id*. ¶¶  10, 13, 18).  Plaintiff

contends the Collection Notice demanded payment multiple times but failed to contain

the name of the creditor to whom the debt was owed as required by the FDCPA.  (*Id*. ¶

11).  As a result, Plaintiff alleges the letter violated the FDCPA.  *See* 15 U.S.C. §

1692g(a)(2).

     Plaintiff originally defined the class as:

> All persons who received a Collection Notice during the one year preceding the
> filing of this action through the date of class certification from Virtuoso Sourcing
> Group, LLC that failed to contain the name of the creditor to whom the debt was
> owed.

(Compl. ¶ 16).

     Upon over-breadth challenges to the class definition in Virtuoso's Response,

Plaintiff has modified the class description to the following:

---

[1] The court notes that Plaintiff's Amended Complaint, Memorandum in Support of Motion, and
Reply state that the letter at issue is dated November 2, 2010.  However, as the Original
Complaint states and Exhibit A therein conveys, the letter is dated November 3, 2010, so the
court will treat it as such.

> All natural persons who were sent a letter from Virtuoso Sourcing Group, LLC in the form of Exhibit A that (i) failed to contain the name of the creditor to whom the debt was owed (ii) in an attempt to collect a debt that was primarily for personal, family, or household purposes (iii) which were not returned undeliverable by the U.S. Post Office (iv) during the one year preceding the filing of this action through the date of class certification.

(Pl.'s Reply 4).

## II.   Discussion

The FDCPA expressly provides for class actions.  *See* 15 U.S.C. § 1692k(a)(2)(B). In order to certify a class, Plaintiff must not only satisfy all requirements under Rule 23 but also comply with any implied standards for the class members.  In particular, Plaintiff must show that the class members are identifiable and have valid claims against Virtuoso.

Next, Plaintiff must satisfy a two-step analysis of Rule 23 to determine whether class certification is appropriate.  First, a plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Second, the action must also satisfy one of the conditions of Rule 23(b).  *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).  Plaintiff seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

In this analysis the party moving for class certification bears the burden of establishing that certification is proper. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)). In evaluating whether class certification is appropriate, "the court accepts all well-pled allegations made in support of certification as true." *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 661 (N.D. Ill. 1996). Plaintiff's failure to satisfy any of these conditions dooms her lawsuit. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston*, 992 F.2d at 703). However, the "district court maintains broad discretion in determining whether certification is appropriate." *Id.* at 596 (citing *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir. 1985)).

Plaintiff contends she has satisfied all requirements for class certification. Virtuoso argues that Plaintiff's proposed class should not be certified because it: (1) fails to create an identifiable class; (2) includes persons whose claims are time-barred; and (3) fails to satisfy any of the requirements under Rule 23(a) or 23(b). Accordingly, the court will address each of Virtuoso's principle objections below.

## A. Proposed Class is Identifiable

First, plaintiff must show that a proposed class is identifiable and ascertainable. Although this requirement is not set forth in Rule 23, the Seventh Circuit has stated that a "plaintiff must show . . . that the class is indeed identifiable as a class." *Oshana*, 472

F.3d at 513 (citing *Alliance to End Repression*, 565 F.2d at 977 (stating the definition of a proposed class must be "sufficiently definite to permit ascertainment of the class members")). That said, "it is not fatal for a class definition to require some inquiry into individual records, so long as the inquiry is not 'so daunting as to make the class definition insufficient.'" *Sadler v. Midland Credit Mgt., Inc*., No. 06-C-5045, 2008 WL 2692274, at *3 (N.D. Ill. July 3, 2008) (quoting *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 624 (N.D. Ill. 2007)). Indeed, a class is identifiable if the information necessary to identify class members is available through a "ministerial review" rather than an arduous individual inquiry. *Id. See also Sadler v. Midland Credit Mgmt., Inc.,* No. 06-C-5045, 2009 WL 901479, at *2 (N.D. Ill. 2009) (granting amended motion for class certification where potential manual review to weed out false positives "might prove administratively burdensome, but a review for such straightforward objective criteria nevertheless remains ministerial in nature") (internal citation omitted).

Virtuoso argues that the class definition is not ascertainable because it requires an inquiry as to whether an individual incurred a consumer debt (and thus within the scope of the FDCPA) or a non-consumer debt (and instead outside the FDCPA's scope). To that end, Virtuoso contends it has "no ready means of distinguishing individual consumer debts from individual non-consumer debts." (Def.'s Sur-Reply 3). As a result, Virtuoso alleges that the class is impermissible because it would require "individualized inquiries, or mini-trials" to determine whether the debt at issue was subject to the FDCPA.

5

However, Virtuoso's analogy to *Sadler* is misplaced.  2008 WL 2692274.  There, no information existed for a key element to the class – whether a written contract existed for the account in question.  *Id.* at *5.  Further, defendants in *Sadler* provided evidence of how the proposed search criteria would produce a large percentage of false positives. *Id.* at *4.  By contrast, Virtuoso only submitted an affidavit from Virtuoso's CEO that included the conclusory statement that "Virtuoso generally does not know, and has no way of knowing, whether a particular individual's delinquent obligation was incurred primarily for personal, family, or household purposes."  (Def.'s Sur-Reply, Ex. A ¶ 3). This statement goes to the heart of separating consumer debt from non-consumer debt under the FDCPA.  However, no additional evidence has been provided for whether the proposed class criteria would produce false positives or anything documenting the kind of arduous individual inquiries that may be necessary.  If unsupported conclusory statements such as these were enough to defeat class certification, then FDCPA claims would rarely become class actions as anticipated in the statute.

But as several courts have noted, "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.  If that need alone precluded certification, there would be no class actions under the FDCPA."  *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001); *see also Miller v. McCalla*, *Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001) ("If the need to show whether each loan transaction was a consumer rather than

6

a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA."); *In re CBC Companies, Inc. Collection Letter Litigation*, 181 F.R.D. 380, 385 (N.D. Ill. 1998) (denying motion to decertify in finding that if business versus personal debt ruined commonality then it would be impossible to bring a FDCPA class action if there were a chance a possible class member used a credit card for business purpose, which would be "contrary to the clear remedial goals of the FDCPA").

Even if Virtuoso provides further evidence that its database cannot differentiate between consumer debt and non-consumer debt, this fact alone does not preclude class treatment. Class members may be asked a single question to determine whether they are entitled to relief. *Wilkerson*, 200 F.R.D. at 610 (finding the "fact that class certification . . . may require the parties to ask the individual class members one question does not automatically establish that individual issues 'predominate'" (citing *Wells v. McDonough*, 188 F.R.D. 277, 279 (N.D. Ill. 1999))). In this case, that question would be whether the individual's debt at issue qualifies as consumer debt.

And finally, Virtuoso's concerns about the potential hardship in determining the class are alleviated by Rule 23(c)(1)(C), which allows the court to alter or amend an order that grants class certification before final judgment. *See Alliance to End Repression*, 565 F.2d at 977 (stating that the district court "has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed

consistent with Rule 23's requirements").  At bottom, a class action is the superior

method to the fair and efficient adjudication of this controversy even if additional

ministerial inquiries are necessary.

### B. Class Claims are Timely

Next, the proposed class cannot include individuals who have no claim.  *See*

*Oshana*, 472 F.3d at 514 (denying certification where class may include millions of

members who had no grievance under the statute).  Virtuoso argues that the class

definition includes persons whose claims are time-barred and thus should not be certified.

The FDCPA provides a one-year statute of limitations.  15 U.S.C. § 1692k(d).

Virtuoso sent the letter at issue, dated November 3, 2010, to Plaintiff, and Plaintiff

commenced this action on November 2, 2011, by filing her individual complaint.  (Pl.'s

Original Compl.).  Plaintiff then amended her complaint to include class action claims

approximately three months later on February 1, 2012.  (Compl.).  The proposed class

action includes claims concerning certain letters received from Virtuoso "during the one

year preceding the filing of this action through the date of class certification."  (Compl. ¶

16).

Virtuoso argues that the action did not contain any putative class claims until

February 1, 2012, and thus the proposed class would include persons whose claims were

time-barred because they accrued more than a year prior to February 1, 2012.  On the

other hand, Plaintiff argues that the class includes those who were sent a deficient letter

8

in the one year preceding the filing of the original individual complaint because the amended class action complaint relates back to the filing of the original complaint under Rule 15(c).  As a result, Plaintiff argues the class properly includes individuals who received allegedly deficient collection notices in the year preceding the filing of the original individual complaint.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]"  FED. R. CIV. P. 15(c)(1).  While this rule "does not explicitly address the relation back questions which arise when an amendment substitutes or adds plaintiffs, it is clear that the considerations established in the rule were intended to apply to such amendments."  *Paskuly v. Marshall Field & Company*, 494 F.Supp. 687, 688 (N.D. Ill. 1980).  In deciding whether a claim asserted by a new plaintiff shall relate back, the court should consider "whether the defendant had such notice of the added claim at the time the action was commenced that relation back of the added claim will not cause the defendant undue prejudice," and in making this determination, be mindful that the "Federal Rules of Civil Procedure are to be liberally construed[.]"  *Id*.; *Staren v. American Nat. Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976).

*Paskuly* provides guidance with this issue.  There, plaintiff initially filed a Title VII action in an individual capacity concerning discriminatory employment practices, but

amended the complaint over fourteen months later to include class action claims for those same practices.  The district court held the new class allegations related back to the filing of the individual complaint because (1) the claims arose from the same employment practices from which the individual claim arose; (2) the policies underlying Title VII favored class actions; (3) defendant had notice of the possibility of a class action: and (4) defendant was not prejudiced because the same evidence was required to defend the class action.  *Paskuly*, 494 F.Supp at 689.  In addition, the court noted that little discovery had been completed in the action so transformation into a class action would not unduly delay the proceedings.  *Id*. at 690.

Similarly, the Plaintiff's class allegations should relate back.  First, the class claims arise from the same defect contained in Plaintiff's collection letter – Virtuoso's failure to name a creditor.  In fact, Plaintiff's original allegations and the amended class allegations concern the exact same conduct by Virtuoso – sending the letter at issue.

Second, like Title VII claims, the policies underlying FDCPA favor class actions.  Not only does the FDCPA contemplate the use of class actions to resolve claims, but courts also favor class actions to resolve such disputes.  *See, e.g. Balogun v. Midland Credit Management, Inc.*, No. 1:05-cv-1790, 2007 WL 2934886, at *8 (S.D. Ind. Oct. 5, 2007) (holding a class action is the best method for the fair and efficient adjudication of FDCPA claim).

Third, Virtuoso had notice of the possibility of a class action. In particular, Virtuoso knew it may be required to defend the same conduct against other letter recipients as it was aware that a "glitch" from a "new vendor" had caused not only issues with Plaintiff's letter, but also led to a prior class action dealing with a similar issue. (Def.'s Resp. 10); *Griffith v. Virtuoso Sourcing Group, LLC*, No. 1:11-cv-00467 (S.D. Ind. 2011) (class action filed April 6, 2011 alleging Virtuoso violated the FDCPA by failing to include in collection letter the name of the creditor to whom the debt was owed). This was sufficient to put Virtuoso on notice. *See Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 578 (E.D.Wis. 2004) (finding defendant on notice and not prejudiced by the addition of additional putative class members where defendant knew letter at issue had been sent to 291 employees), *vacated on other grounds*, *Clarke ex rel. Pickard v. Ford Motor Co.,* 228 F.R.D. 631 (E.D.Wis. 2005); *Lopez v. City of Chicago*, No. 01-C-1823, 2002 WL 31415767, at *3 (N.D. Ill. 2002) (holding defendants had fair notice of new class action claims where new claims arose from same conduct in original complaint, the new claims would not alter known facts or issues found in the original complaint, and the new claims were based on the same legal theories and facts set forth in the original complaint). Virtuoso argues that Plaintiff's initial filing of an individual action removed any potential notice for a class action. But that is not so when Virtuoso knew the conduct alleged in the complaint applied to a large number of potential defendants. *See Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir. 1981) (finding the "broad-based

11

nature of the original complaint" did not take defendant off notice of a possible class action when plaintiff instituted action in an individual capacity).

And fourth, Virtuoso will suffer no undue prejudice in allowing relation back of Plaintiff's class claims.  Virtuoso argues that allowing Plaintiff to resurrect claims of non-parties that have already expired would be prejudicial.  (Def.'s Sur-Reply 6).  However, the "primary purpose of statutes of limitation is to protect parties from the prejudice caused by the loss of evidence due to the passage of time." *Paskuly*, 494 F.Supp. at 689. Here, no such prejudice exists as only three months transpired between the filings of the individual complaint and the class action complaint.  And Virtuoso has not pointed to any evidence lost, destroyed or anything else detrimental occurring in that time period.  *See Clarke*, 220 F.R.D. at 578 (finding claims for putative class related back to the filing of original individual action where no evidence of anything occurring between the filing of the original complaint and the filing of the amended complaint would prejudice defendant's ability to defend the action).

Moreover, since the same allegations were made in the amended complaint as the individual complaint, it can be presumed that the same or very similar evidence will be needed to defend the class action claims as it would have needed in the Plaintiff's original individual claim.  *See Paskuly*, 494 F.Supp. at 689.  In fact, as the Defendant notes, limited discovery has been completed at this point, so transformation into a class action will not unduly delay the proceedings.  (Def.'s Resp. 17); *see id*. at 690.

Finally, Virtuoso's argument that relating back is prejudicial because class actions may coerce a defendant to settle is inapplicable here.  First, "an increase in potential liability is not a sufficient reason to deny relation back for a claim."  *Olech v. The Village of Willowbrook*, 138 F.Supp.2d 1036, 1046 (N.D. Ill. 2000).  And further, Virtuoso has admitted that it failed to include the creditor's name in at least forty debt collection letters, which allegedly is a violation of the FDCPA.  (*See* Pl.'s Reply, Ex. B at Request No. 4).  To be sure, Virtuoso may have valid defenses for this conduct, but it is unconvincing to argue that baseless and meritless claims will result if certification is granted.

The amended pleading therefore "relates back" to the date of the original pleading under Rule 15(c) of the Federal Rules of Civil Procedure and thus preserves any claims which tolled the statute of limitations after November 2, 2011.  Next, the court addresses Virtuoso's arguments concerning Plaintiff's ability to satisfy the requirements of Rule 23.

### C. Rule 23(a)

#### 1. Numerosity

Plaintiff must show that the class is so numerous that joinder of all members is impracticable.  FED. R. CIV. P. 23(a)(1).  Although Rule 23 does not identify a threshold number to establish numerosity, "joinder is considered impractical when a class numbers at least forty members."  *Walker v. Calusa Investments, LLC,* 244 F.R.D. 502, 506 (S.D. Ind. 2007) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)).  Even

though the exact number of class members need not be pleaded or proved, plaintiff "cannot simply rely on conclusory allegations that joinder is impractical or upon speculative allegations as to the size of the class to satisfy numerosity." *Id.*

Here, Virtuoso argues that Plaintiff failed to provide any evidence of numerosity. However, Plaintiff included in its Reply an admission from Virtuoso's CEO that "[d]uring the Class Period, [Virtuoso] sent at least forty collection notices to individuals that failed to contain the name of the creditor to whom the debt was owed."[2] (Pl.'s Reply, Ex. B at Request No. 4). To that end, courts have found that it is reasonable to assume that the numerosity requirement has been met "when the defendant allegedly used 'preprinted, standardized debt collection letters in attempting to collect on the [allegedly delinquent] debt.'" *Lucas v. GC Services L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005) (citing *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, et al.*, No. 00-C-4511, 2001 WL 1543516, at *3 (N.D. Ill. Nov. 30, 2001)).

---

[2] Virtuoso argues that the court should not consider any new evidence Plaintiff provided in its Reply and supporting papers. The certification of a class action is an ongoing decision under Rule 23(c)(1). Indeed, the class definition may be amended by the court and parties as necessary, and thus additional discovery is allowed in deciding certification. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) (finding that in some cases a court may abuse its discretion by not allowing for appropriate discovery in deciding whether to certify a class). Further, the evidence used is Virtuoso's own admissions, so there is no indication that Virtuoso suffered any unfair surprise. *See Parker v. Risk Management Alternatives, Inc.*, 206 F.R.D. 211, 212-13 (N.D. Ill. 2002). Additionally, the Requests for Admission were served over five months after the filing of Plaintiff's original motion (and before Virtuoso filed its Response), so Plaintiff cannot be faulted for not advancing this evidence in its original motion. *See id.* at 213. Moreover, Virtuoso was granted a sur-reply in order to address any additional evidence presented in the Reply, which eliminates any potential prejudice. As a result, such evidence has been considered in deciding this motion.

Thus, Plaintiff has produced sufficient evidence of the class size to satisfy the numerosity requirement.

## 2. Commonality

The commonality requirement focuses on whether "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). This requires the plaintiff to demonstrate the class members "have suffered the same injury . . . not merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (internal citations omitted). That is, the claims must have a "common contention which is of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve the issue that is central to the validity of each one of the claims in one stroke." *Id.*

Claims arising from standardized form letters meet this requirement as a "[c]ommon nuclei of fact are typically manifest where . . . the defendant[] [has] engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters of documents." *Keele*, 149 F.3d at 594; *see also Lucas*, 226 F.R.D. at 340 (stating that when a "question of law refers to standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met") (citation omitted).

15

Here, each putative class member's claim arises from the same practice of Virtuoso which gave rise to the Plaintiff's claim.  In particular, the same action by Virtuoso – mailing a collection letter that did not contain the name of the creditor – gives rise to both the Plaintiff's and class members' claims.

Virtuoso argues that Plaintiff failed to establish commonality because the class (1) failed to meet the recent *Wal-Mart* standard for commonality, and (2) required individualized proof for subsequent communications after the letter.  Neither of these defeats this requirement.  In fact, the *Wal-Mart* standard highlights how the class meets the requirement.  Whether Virtuoso sent to the class members a collection notice that violates the FDCPA will "resolve the issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart,* 131 S.Ct. at 2551.

Finally, Virtuoso argues that the five day notice requirement under 15 U.S.C. § 1692g presents individual issues that cannot be settled on a uniform basis.[3]  However, this is another issue that is common to the class.  And to the extent this information is not easily ascertainable in Virtuoso's database, this again is a simple question that can be asked of the class to determine who should be included.  *See id.* (stating "factual variations among class members' grievances do not defeat a class action").  Thus, the commonality requirement has been established.

### 3.  Typicality

---

[3] In relevant part, 15 U.S.C. 1692g(a) states that a debt collector must provide the debtor with the name of the creditor within five days of initial communication, if the initial communication did not do so.

The claims or defenses of the representative parties must be typical of the claims or defenses of the whole class. FED. R. CIV. P. 23(a)(3). The test for typicality closely resembles the commonality inquiry. *Lucas*, 226 F.R.D. at 341. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). Moreover, "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id*. The critical test is "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Walker* 244 F.R.D. at 507.

Virtuoso argues that typicality is lacking because, among other things, Virtuoso does not send form collection notices and, as a result, Plaintiff cannot argue that her claim would be similar to other class members who received the same type of letter. However, Virtuoso admitted that during the Class Period, Virtuoso sent at least forty collection notices to individuals that failed to contain the name of the creditor to whom the debt was owed. (Pl.'s Reply, Ex. B). In fact, Virtuoso admitted these allegedly deficient collection notices were due to a "glitch in working with a new vendor." (Def. Resp. 10). In short, every class members' claim arises from the same practice of

Virtuoso which gave rise to the Plaintiff's claim – that is, each time Virtuoso sent a collection letter similar to the one received by the Plaintiff, it allegedly violated the FDCPA. By mailing these similar letters to at least over forty individuals, Virtuoso engaged in the same course of conduct towards Plaintiff as it did to all other putative class members.

Even more, all putative class members allege violations of the same statutory sections under the same legal theory. As a result, the same legal issue present in Plaintiff's case – whether the omission of the creditor's name is a violation of the FDCPA – is also the legal issue present for all other class members who received a similar letter.[4] As such, the requirements for typicality have been met.

### 4. Adequacy of Representation

The adequacy of representation requirement under Rule 23(a)(4) "mandates that both the class representative and the counsel for the named plaintiff must be able to zealously represent and advocate on behalf of the class as a whole." *Lucas*, 226 F.R.D. at 341. The class representative must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy" while not having "antagonistic or conflicting claims with other members of the class." *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999).

---

[4] Even if minor form and formatting differences exist in the collection letters for the class, the claims and defenses of Plaintiff will be identical to the class at large. Further, the class definition should also eliminate any major differences in letters between class members as the class only includes "natural persons who were sent a letter from Virtuoso Sourcing Group, LLC in the form of [Plaintiff's letter]." (Pl.'s Reply 4).

18

Similarly, class counsel must be "experienced and qualified and generally be able to conduct the litigation." *Lucas*, 226 F.R.D. at 341.

Virtuoso argues that a conflict of interest exists between the Plaintiff and members of the class because class members stand to receive "substantially less" in a class action than they could recover individually. This argument carries no weight. First, Virtuoso cites no case law supporting this proposition and concedes that district courts have "glossed over this inherent conflict." (Def. Resp. 12). At its core, if such argument had merit, then class actions for FDCPA claims would not be possible and the statute explicitly contemplates such. *See* 15 U.S.C. § 1692k(a)(2)(A). Further, numerous courts in this Circuit have certified FDCPA class actions while finding the class representative adequate. *See, e.g. Balogun*, 2007 WL 2934886, at *6; *Hubbard v. M.R.S. Associates, Inc.*, No. 1:05-cv-0218, 2008 WL 5384294, at *3 (S.D. Ind. Dec. 19, 2008).

Here, the court finds Plaintiff to be an adequate representative without any conflicts or antagonistic claims of the proposed class members. All members of the class received the allegedly deficient letter issued by Virtuoso and are challenging its validity under the FDCPA. The Plaintiff has a sufficient stake in the outcome and will be a zealous advocate of the class. In addition, counsel for named Plaintiff is experienced in class actions and other complex litigation and thus satisfies that requirement. Accordingly, the adequacy of representation requirement under Rule 23(a)(4) has been met.

### D. Rule 23(b)

After satisfying the class certification requirements under Rule 23(a), the

Plaintiff's proposed class must also meet the requirements under one of the three

subsections of Rule 23(b).  Here, Plaintiff attempts to satisfy Rule 23(b)(3), which

requires that (1) the questions of law or fact common to all members of the class

predominate over questions pertaining to individual members, and (2) a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy.

FED.R.CIV.P. 23(b)(3).

### 1. Predominance of Issues

In determining whether this factor is met, common questions must predominate,

but they need not be exclusive.  *Lucas*, 226 F.R.D. at 342.  Cases dealing with the legality

of standardized documents are generally appropriate for resolution by class action

because the document is the focal point of the analysis.  *See Haroco, Inc. v. American

Nat'l Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (stating claims arising out

of standard documents present a "classic case for treatment as a class action") (citation

omitted); *Jackson v. Nat'l Action Fin. Services, Inc.,* 227 F.R.D. 284, 290 (N.D. Ill. 2005)

(holding that "[a]s long as the letters that class members received are very similar . . . the

legal issue of whether those letters violate the FDCPA is predominate") (internal

quotation and citation omitted).

Here, the Plaintiff and each putative class member received an allegedly deficient collection notice from Virtuoso.  As a result, the common and predominating issue is whether the debt collection letters sent to Plaintiff and the class members violate the FDCPA.  This is sufficient to satisfy this prong.  *See Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) (certifying FDCPA class action and finding that predominance prong satisfied where similar debt collection letters were at issue).

Virtuoso failed to show any individual issues would outweigh the question of whether the letters at issue violate the FDCPA.  Most potential issues were resolved in the amended class definition and any subsequent discrepancies do not predominate over the principle issue of this lawsuit – whether the letter sent by Virtuoso violated the FDCPA.  As a result, common issues predominate.

### 2. Superiority of Class Action

A class action is superior to all other methods in this case as it will efficiently resolve a potentially large number of claims that share a similar set of legal and factual issues.  In the absence of class certification, the courts could potentially be inundated with "many individual cases that seek to litigate an essential core of the same legal and factual issues."  *Lucas*, 226 F.R.D. at 342.  These separate actions would be "repetitive, wasteful and an extraordinary burden on the courts[,]" so a class action is necessary here. *Tatz v. Nanophase Technologies Corp.,* No. 01-C-8440, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2003).

Even more, individual suits would be unlikely, as recipients of the collection letter may be hesitant to prosecute individual claims without the availability of the cost-sharing efficiencies of a class action.  Indeed, "individual recovery under the FDCPA can be relatively small, and many consumers are unfamiliar with its protections, [so] a class action is the best method for the fair and efficient adjudication of [this] issue[,] . . . where the underlying liability issue can be determined relative to the whole class." *Balogun*, 2007 WL 2934886, at *8; *see also Parker*, 206 F.R.D. at 213 (finding class action a superior method because damages awarded to individual class members may be too insignificant to provide enough incentive for them to pursue their FDCPA claims individually).

At its core, a class action is the appropriate way to proceed in this action.

## III.    Conclusion

For the reasons set forth above, the court **GRANTS** Plaintiff's Motion for Class Certification (Docket #11) for the amended class definition.  The court finds the Plaintiff has satisfied her burden of showing the appropriateness of class certification under FED. R. CIV. P. 23(a) and (b) with respect to Plaintiff's FDCPA claim.

**SO ORDERED** this 29th day of September 2012.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record